**UNITED STATES of America,**
**Appellee,**

v.

**Braxton C. WALLACE, Appellant.**

**No. 8373.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 6, 1961.

Decided March 8, 1962.

Hal Lindsay, Atlanta, Ga. (Randolph Hayes, Atlanta, Ga., on brief), for appellant.

James D. Jefferies, Asst. U. S. Atty., Greenville, S. C. (John C. Williams, U. S. Atty., Greenville, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Braxton C. Wallace, a lawyer and certified public accountant from Greenwood, South Carolina, was indicted in October 1957 jointly with one of his clients, Maurice Puckett, for conspiring to prepare false income tax returns for Puckett and for the substantive offenses of attempting to evade part of Puckett's income tax for the calendar years 1951, 1952 and 1953. In April 1959, Wallace was found guilty on all four counts by the jury. An appeal to this court followed; we reversed the judgment of conviction and remanded the case for a new trial.[1] In April 1961 Wallace was again tried on the same indictment and the jury returned a verdict of not guilty on Count One, the conspiracy count, but found him guilty as charged in Counts Two, Three and Four.[2] We are of opinion to affirm.

Maurice Puckett owned several corporations and had extensive real estate holdings. Wallace was employed, for the years in question and for many years prior thereto, to supervise the accounting work for Puckett's various interests and to prepare the income tax returns for the latter's businesses, for Puckett individually and for other members of the Puckett family. One of Puckett's business interests was his wholly-owned Savannah Hotel Operating Company (hereinafter referred to as SHOC), which operated the Savannah Hotel in Savannah, Georgia. Wallace's familiarity with the books of SHOC and the extent of his employment are disputed, but he did prepare the tax returns for the corporation and was generally responsible for supervision of the hotel's fulltime house auditors who kept the books and prepared detailed monthly statements of the hotel's operations for Puckett. A composite annual statement showing operations for the calendar year was prepared, and a copy was sent to Wallace's office in Greenwood for his use in preparing the hotel's tax returns.

It is uncontradicted that the tax returns of Maurice Puckett for 1951 through 1953 do not reveal or report as income substantial sums received by the taxpayer or expended for his benefit during those years. Certain of the deficiencies in Puckett's tax resulted from taxpayer's practice of having his own personal and family expenses paid by SHOC and charged to the hotel's operating accounts, rather than to his personal account. Puckett also received rentals from the air conditioning units owned by him but installed and used in the hotel guest rooms; such receipts were not reflected in his 1951 and 1952 tax returns which were prepared by Wallace. In 1951 and 1952 Puckett received certain funds from a "package shop" (retail liquor store) in the hotel. During those years the "package shop" was operated by Puckett's brother, Randolph Puckett, who normally received all the revenue therefrom, but in some instances Maurice Puckett drew checks on the

---

1. 4 Cir., 281 F.2d 656.

2. The three counts on which Wallace was convicted at the second trial charge a violation of Int.Rev.Code of 1939 § 145 (b), 26 U.S.C.A. § 145(b):

   "(b) Failure to collect and pay over tax, or attempt to defeat or evade tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

"package shop" bank account for his own personal use. These receipts by Maurice Puckett were omitted from tax returns.

It is defendant's contention that he prepared Maurice Puckett's income tax returns from information furnished him by Puckett and that he had no knowledge of the unreported amounts which the Government charges were income to his client. Although defendant contended at the trial that certain of the unreported items were not "income" of taxpayer, he now contends that *all* unreported items are not "income" and suggests a new theory which was not advanced at either trial, i. e., that certain of the unreported items were embezzled or stolen by Puckett from SHOC and were, therefore, not "income." This point will be later discussed.

Rather than submitting a *brief* in the usual sense of that term, defendant has presented to us a list of eighteen specifications of error involving almost every phase of the trial. Following a short statement of each alleged error is a citation of one or more cases without discussion thereof or without any attempt to explain the applicability of the cases cited as authority. This "shotgun" presentation of the multiple grounds for appeal imposes a great burden on the court. We find no reversible error in any of the points raised and, therefore, deem it unnecessary to extend our discussion beyond the present limits of this opinion.

■ Prior to trial, defendant and the United States Attorney entered into a written stipulation whereby, as we interpret it, identification by witnesses of documents and records procured from certain firms, corporations, etc., named in a schedule attached to the stipulation, was not required in order to render such documents and records admissible in evidence, the defendant reserving the right to object to the admissibility of such documents and records on other grounds. At trial, defendant objected to the admission into evidence of copies of ledger sheets from certain department stores which purported to show the accounts of Mr. and Mrs. Maurice Puckett with those stores. It is contended that the records are "third-party records, hearsay" and otherwise incompetent and prejudicial.

The Government's brief, equally obtuse on this point, responds that these documents are admissible according to the terms of the stipulation. However, the objection is not grounded upon the lack of identification. It is clear that the waiver of identification has no bearing on the competency and relevancy of the documents. For the Government to prove a part of its case, it was necessary to show: (1) That certain funds of SHOC were used to pay the personal expenses of Maurice Puckett and his family; (2) the funds were accounted for on SHOC books by charging these personal expenses to the hotel's operating accounts rather than to Maurice Puckett's personal account; and (3) that defendant Wallace knew of the transactions just referred to yet wilfully failed to include in Puckett's 1951–53 income tax returns a report of the expenditures by SHOC for Puckett's personal benefit. The records in question were introduced as *part* of the Government's proof of element (1) above and were admissible for that purpose. Defendant objected to the introduction of the records because they were not available to anyone inspecting the books of SHOC and, more particularly, were not available to defendant in connection with his work with SHOC. Though defendant's objection appears on its face to be well-grounded, an inspection of the exhibits in evidence shows that the department store accounts merely indicate that personal items were purchased by members of the Puckett family from those stores. Defendant could not have been prejudiced by the showing of that fact alone. Several stacks of vouchers with attached SHOC checks and bills, or statements (showing the purchase of personal items by members of the Puckett family) were introduced, however, without objection by defendant, conclusively showing that SHOC funds were used to pay Puckett's personal bills. The

account to be charged on the hotel's books is indicated on the voucher which, along with the bill or statement representing the purchase, was in most instances approved by Maurice Puckett as evidenced by his signature or initials thereon. The records from the department stores merely serve to confirm information readily available in SHOC files; hence the introduction of the records into evidence, though perhaps unnecessary, merely supplemented other Government evidence to the introduction of which no objection was made.

■ Another alleged error is the following statement by the Assistant United States Attorney who tried the case, addressed to one of the defense witnesses while she testified:

> "Mrs. Early, I have to remind you that you are under oath and that you are subject to prosecution for perjury, should you commit perjury."

Immediately after that statement, the witness responded, "That's right," whereupon the defendant's attorney interposed his objection, which was sustained by the trial judge. The court then instructed the jurors that they should not consider the statement of the Government attorney. Any harmful or prejudicial effect it may have had was removed when the court sustained defense counsel's objection and instructed the jury to disregard the statement. The error was harmless and will be disregarded. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.

■ Defendant objects to the trial court's refusal to admit into evidence an unsigned statement of the defendant, containing forty-two pages in question and answer form, taken by Internal Revenue agents in 1954. The District Judge rejected defendant's proffer of the entire statement into evidence in reliance upon defendant's own assertion that parts of it were inaccurate and did not faithfully represent what he had said in answer to some of the questions. The court was thus acting to protect defendant's own interest. Permission was given to defense counsel to read the entire statement into the record and to ask defendant after each of his reported answers whether the transcription was correct. Counsel for defendant followed this suggested procedure briefly but failed to take advantage of the opportunity to test the accuracy of the answers to all 287 questions. Under these circumstances, the admissibility of the statement as a whole, when offered by defendant, was within the discretion of the trial judge, and we perceive no abuse of that discretion.

■ It is asserted as error that the District Judge sustained a Government objection to the testimony of defense witnesses Caraway and R. H. Wallace (defendant's son) who were asked, as expert witnesses, to tell what pages were missing from a certain ledger of the George Vanderbilt Hotel and what entries were on the missing pages. Neither witness had seen the ledger until shortly before he was called to testify about the missing pages. The Government objected on the ground that alleged entries on the pages said to be missing were not relevant to any issue in the case. The court then ascertained, through interrogation of defense counsel and the witnesses themselves, that neither Caraway nor R. H. Wallace had ever seen the complete ledger and did not claim to have independent knowledge of its contents. As expert accountants, they may have known what is generally contained in a ledger but they could not know what pages had once been a part of and were missing from the ledger about which they were expected to testify. We find no error in this particular.[3]

It is claimed that the District Court erred in refusing to give several specific instructions requested by defendant. De-

---

3. The District Judge indicated that Maurice Puckett, who had had possession of the ledger since the first trial when it was seen in complete form, could be called to testify about the missing pages and their contents.

fendant confines his argument to one of the requested instructions and we therefore limit our discussion to that point. Defendant requested that the jury be charged as follows:

"I charge you that it is the duty of the prosecution in a criminal trial to produce and use all witnesses within reach of process, of whatever character, whose testimony will shed light on the transaction, whether it makes for or against the accused."

The only federal case cited in support of this request is United States v. Palese, 133 F.2d 600, 603 (3d Cir. 1943). In that case there is language substantially the same as that quoted above in the requested instruction. The question there, however, was whether in a perjury trial the jury could reject one part and accredit another part of the testimony of a Government witness. In answering that question in the affirmative, the court said that the prosecution does not necessarily vouch for the credibility of every witness who is called by it to testify because the Government must present all relevant testimony concerning the matters at issue in the trial.

■■ We agree that the Government must not suppress evidence favorable to a defendant in any prosecution but, for obvious reasons, a United States Attorney is not bound to call to the witness stand every person who appears pursuant to a subpoena issued and served at Government direction. In the case at bar, defendant sought to show impropriety in that the United States Attorney's staff failed, at the first trial of this case, to offer the testimony of two witnesses who had been subpoenaed by the Government. Defendant claims that the witnesses had information favorable to the defendant and that such information was suppressed by the Government at the first trial. The court was not concerned with the conduct of the first trial and there is no allegation that evidence was suppressed at the second trial. The United States Attorney explained that any testimony which these two witnesses might give was not, in his opinion, relevant to the charges contained in the indictment. These same two witnesses were called by the defense to testify at the second trial. Under these circumstances, it was not error to refuse the requested instruction since the apparent objective of the proponent was simply to discredit the prosecution.

■ Defendant also challenges the sufficiency of the evidence to convict, but the evidence at the second trial was substantially the same as that offered by both parties during the first trial. On the former appeal we specifically held that the evidence, though conflicting and circumstantial in nature, was sufficient to sustain the conviction.[4] At the second trial the jury heard the testimony of the two additional witnesses above mentioned but, in our opinion, that testimony did not add materially to the defendant's case. The Government's case is still based on circumstantial evidence of defendant's knowledge of Puckett's evasion of federal income taxes, the particular circumstances relied upon being as follows: (1) Hugh Shearouse, a former resident auditor for SHOC, told of a conversation with Wallace in which he (Shearouse) said, "Mr. Wallace, the way I see it, Mr. Puckett is putting some personal items on here [SHOC books] that I do not think he can get by with." Wallace, according to the testimony, then relayed this information to Puckett in Shearouse's presence, but no corrective action was taken. (2) Wallace admitted that he was responsible for the arrangement whereby Puckett personally bought the room air conditioners, thereafter charging the hotel a rental fee for each day's use of the machines. SHOC paid the rental charges to Puckett, according to Wallace's instructions, but this revenue is not reflected in Puckett's income tax returns. The jury could have found from this evidence that Puckett was not reporting certain substantial portions of

4. Wallace v. United States, 281 F.2d 656, 659–60 (4th Cir. 1960).

his income in the information furnished Wallace and that Wallace knew of the income received by Puckett, unreported in the income tax returns. Defendant has continued to deny that he had knowledge of Puckett's tax deficiencies or had any reason to know of them when he prepared Puckett's returns. It is contended that Wallace never made an *audit* of the SHOC books and thus had no reason to know that payments of the personal items were being reflected in the hotel's accounts rather than in Puckett's personal account. However, the jury could have found that Shearouse called these matters to the attention of Wallace. Defendant explains the failure to report the revenue from air conditioning rentals by saying that he understood the rental payments to Puckett would stop as soon as Puckett had recovered his cost basis in the equipment and he did not know that the cost had been recovered sometime prior to the tax years in question. These were questions for jury determination.

There are other circumstances shown in the evidence with respect to additional items of Puckett's nonreported income; defendant has denied knowledge of those circumstances or has sought to explain them in some way. But, as we pointed out in the earlier opinion, 281 F.2d at 660,

"* * * In determining the sufficiency of evidence to sustain a conviction, the question is not whether the evidence foreclosed all possibility of doubt in the mind of the court, but whether the evidence, construed most favorably for the prosecution, was such that a jury might find the defendant guilty beyond a reasonable doubt. Crawley v. United States, 4 Cir., 1959, 268 F. 2d 808. See United States v. Brill, 3 Cir., 1959, 270 F.2d 525."

Special emphasis is placed by defendant on this final point. He contends that James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246, announced May 15, 1961, about two weeks after the conclusion of the defendant's second trial, affects the sufficiency of the three counts of the indictment on which defendant was convicted. It is asserted that the effect of the James decision is

"* * * to put an end to all pending cases in which the taxes alleged to have been evaded are upon embezzled funds which the Internal Revenue Service has sought to treat as income. Those in which the funds were embezzled, stolen, or otherwise unlawfully taken, prior to the James decision, May 15, 1961, are to be governed by C. I. R. v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, which holds that such funds are *not income* to the embezzler."

In James the defendant had embezzled funds of a labor union of which he was an officer and had been convicted by a New Jersey court of the state crime of embezzlement. Thereafter the federal government charged the defendant James with failure to pay income taxes on the embezzled funds and sought conviction under Int.Rev.Code of 1939 § 145(b) and the corresponding section of Int.Rev. Code of 1954 § 7201, 26 U.S.C.A. § 7201. After trial and conviction in the District Court, affirmed by the Court of Appeals, the Supreme Court reversed the conviction and ordered dismissal of the indictment.

Much earlier the Supreme Court, in Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), held that embezzled funds were not "income" within the meaning of the federal taxing statute [5] and were not taxable as such. However, in Rutkin v. United States, decided in 1952, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, the question was presented as to the taxability as "income" of funds determined by a jury to have been obtained through extortion. It was there held that such funds were taxable as income but the Court, in referring to Commissioner v. Wilcox, stated: "We do not reach in this case the factual situation

---

5. Int.Rev.Code of 1939 § 22(a).

involved in Commissioner v. Wilcox, * * *. We limit that case to its facts." 343 U.S. 130, at 138, 72 S.Ct. 571, at 576.

In the James case there is no opinion for a majority of the Court. Six Justices decided to overrule Commissioner v. Wilcox but only three of those six voted to reverse the conviction.[6]

■ We need express no opinion concerning the effect of the James decision on other cases involving other facts, but we reject the defendant's contention as to the effect of James on the instant case. There was no showing nor was there any effort to show at the trial that the funds and credits received by Puckett were "embezzled" from SHOC. The Government contends that these unreported receipts of Puckett from SHOC were more in the nature of constructive dividends, but there was no determination below of the nature of those unreported receipts since the issue was not raised. Cf. Currier v. United States, 166 F.2d 346 (1st Cir. 1948). Whether funds were embezzled is a question of fact and this court does not sit as a trier of fact.

It is apparent that the defendant here mistakenly interprets Wilcox when he says that cases involving funds "stolen or otherwise unlawfully taken" are to be governed by Wilcox. Rutkin expressly limited the application of Wilcox on its facts to cases involving embezzled funds. The defendant Wallace seeks to excuse his failure to present this theory of defense at his trial by asserting that the James case was not decided until after the second trial of the case at bar and that it would have been pointless to contend that Puckett incurred no liability for taxes on embezzled funds in view of Rutkin and this court's decision in Briggs v. United States, 214 F.2d 699 (4th Cir.), certiorari denied, 348 U.S. 864, 75 S.Ct. 86, 99 L.Ed. 681 (1954). But neither Rutkin nor Briggs involved a question of taxation of embezzled funds as income and each case pointedly distinguished Wilcox which was still law until May 15, 1961, when James was decided.

If defendant had thought the principles of Wilcox useful in his defense, there was nothing to prevent reliance thereon during his trial. The issue of embezzlement, involving a question of fact, was not submitted to the jury for determination. There was no request for an instruction on this point nor was there any objection to the failure of the court to charge the jury with reference thereto. Defendant cannot escape by now raising a point not presented for determination below and by contending that Puckett was not liable for taxes on embezzled funds within the scope of Commissioner v. Wilcox.

Defendant has recently directed our attention to the case of David D. Beck, a/k/a Dave Beck, v. United States, 1962, 298 F.2d 622, decided by the Ninth Circuit Court of Appeals. That case is so patently distinguishable from the case at bar and so inapposite that we need not discuss it.

Affirmed.

---

6. Chief Justice Warren and Justices Brennan and Stewart voted to overrule Wilcox but thought that the element of willfulness, necessary for conviction under Int. Rev.Code of 1939 § 145(b), could not be proven so long as the tax "statute contained the gloss placed upon it by Wilcox at the time the alleged crime was committed." These three decided that James' conviction should be set aside and that the indictment against him should be dismissed.

Justices Black, Douglas and Whittaker concurred in the judgment reversing James' conviction and dismissing the indictment against him, but they did so because, in their views, Wilcox was correctly decided; they dissented from the decision to overrule Wilcox.

Justice Clark voted to overrule Wilcox but would have sustained James' conviction on the ground that the record showed conclusively that James placed no bona fide reliance on Wilcox in failing to report the embezzled funds as income.

Justices Harlan and Frankfurter likewise voted to overrule Wilcox but would have ordered a new trial to afford James the opportunity to present proof as to what, if any, reliance he had placed on Wilcox in failing to report the embezzled funds as income.