UNITED STATES of America,
Plaintiff-Appellee,

v.

Heman H. McGUIRE, Defendant-
Appellant.

No. 15834.

United States Court of Appeals
Sixth Circuit.

March 23, 1965.

Rehearing Denied May 13, 1965.

Certiorari Denied Oct. 11, 1965.

See 86 S.Ct. 59.

J. Leonard Walker, Louisville, Ky. (H. Rupert Wilhoit, Grayson, Ora Duval, Olive Hill, Ky., on the brief), for appellant.

John M. Brant, Tax Div., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., George I. Cline, U. S. Atty., Lexington, Ky., on the brief), for appellee.

Before CECIL and O'SULLIVAN, Circuit Judges and TALBOT SMITH, District Judge.*

TALBOT SMITH, District Judge.

This case involves defendant's alleged evasion of the payment of federal income taxes by the filing of fraudulent returns.

* Sitting by designation from the U.S. District Court, Eastern District of Michigan.

Trial was had to a jury, which found defendant guilty on both of the counts charged.

Defendant had been the superintendent of schools of Carter County, Kentucky for some twenty-four years, including the years 1955 and 1956, covered by the indictment, during which period he was also the Secretary of the Board of Education. The Board met periodically, voting at such meetings upon the payment of invoices submitted by the Board's vendors. It is in connection with the payment of bills rendered to the Board that defendant's offenses occurred.

Essentially what happened was that the funds of the Board found their way into defendant's pockets. In each instance, as a result of defendant's actions, the Board would order its treasurer, Mrs. Grace S. Horton (who had the sole authority to issue checks and receive monies on behalf of the Board) to make a certain payment, ostensibly for a legitimate bill for merchandise or services. In each instance the defendant contrived to receive all or a part of the money. Although the record lists numerous specific instances of monies received,[1] defendant's methods may be grouped into three, or possibly four, devices or schemes.

The first device involved payment for diverted materials, illustrated by the Minter Homes Corporation matter. In this scheme the defendant would induce the Board to pay for materials supposedly delivered for school use, actually to defendant's use. A second device employed was payment for false claims (i. e. the

[1] "GOVERNMENT'S EXHIBIT NO. 101

HEMAN H. McGUIRE

Grayson, Kentucky

Schedule of Corrected Taxable Income for 1955 and 1956

|  |  | 1955 | 1956 |
|---|---|---|---|
| 1. | Taxable Income Reported on Returns ........ | $ 1,769.62 | $ 5,644.00 |
| 2. | Add Income Not Reported: |  |  |
|  | (a) Automobile from East End Motor Sales... | 2,582.00 |  |
|  | (b) Cash from Stevens Motor Sales ......... | 4,766.18 |  |
|  | (c) Cash from Stevens Motor Sales ......... | 3,726.55 |  |
|  | (d) Cash from East End Motor Sales ....... |  | 3,719.00 |
|  | (e) Cash from East End Motor Sales ....... |  | 3,398.65 |
|  | (f) Checks from Carpenter Body Works ..... | 4,079.80 | 2,026.56 |
|  | (g) Cash from E. B. Whitehurst ........... | 2,562.40 |  |
|  | (h) Cash from Whitehurst Company ........ | 6,178.60 |  |
|  | (i) Account of Heman McGuire with Whitehurst Plumbing Co. paid by Carter County Board of Education ................... |  | 433.95 |
|  | (j) Material from Minter Homes paid by Carter County Board of Education .......... | 2,035.05 |  |
| 3. | Less Additional Deductions |  |  |
|  | (a) Interest paid the First National Bank .... | ( 121.08) |  |
|  | (b) Increase in allowable Standard Deduction.. |  | ( 39.56) |
|  | (c) Expenses of Grayson Professional Building |  | ( 246.25) |
|  | (d) Depreciation on Material from Minter Homes ........................... | ( 20.35) | ( 40.70) |
|  | (e) Arithmetical Errors on Returns ......... | ( .10) | ( 1,912.25) |
| 4. | Corrected Taxable Income .................. | $27,558.67 | $12,983.40 |
| 5. | Taxable Income Not Reported ............... | $25,789.05 | $ 7,339.40 |

(Difference Between Corrected and Reported Taxable Income)"

Stevens Motor Sales case). Here the defendant, as Secretary of the Carter County Board of Education, would falsely certify that the Board owed a creditor a certain sum. The creditor, receiving payment on the claim, would then pay all or part of the proceeds to the defendant.

Still another method used involved payment for false invoices (i. e. the Whitehurst Heating and Plumbing matter). Here the defendant would induce a third person to present a false invoice to the Board, a portion (or all) of the proceeds of which would be paid over to defendant. A variation of this latter device was also employed (i. e., the Carpenter Body Works matter). Here the Board would pay an excessive sum. The defendant would then contrive to have the refund check issued by the vendor to him, rather than the Board. It was the claim of the Government, found to be proved by the jury, that as a result in part of the use of such devices, defendant's actual income for the year 1955 was $23,851.95 rather than the $1,769.62 reported, and for the year 1956 was $9,584.75 rather than the reported income of $5,644.00.

█ Before getting into the issue most strenuously argued, both in the briefs and upon the hearing (the matter of defendant's justifiable reliance upon Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, to be discussed, infra), we will consider those issues turning upon defendant's motion for Bill of Particulars, granted in part and denied as to items (h) through (l) thereof. Defendant asserts that such partial denial was prejudicial error. It has long been recognized that such a motion is addressed to the sound discretion of the trial court and we will not interfere therewith unless an abuse of such discretion, through the subjection of the defendant to surprise and deprivation of opportunity adequately to prepare for trial, is manifest. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; Eggleton v. United States,

227 F.2d 493, 494 (C.A.6, 1955), cert. den. 352 U.S. 826, 77 S.Ct. 38, 1 L. Ed.2d 49. We cannot conclude upon review of the entire record, replete as it is with a thorough and detailed defense, that defendant was taken by surprise during the trial or that his substantial rights were prejudiced in any way by the denial.

█ It is urged by defendant also that, since the Government had stated that it would rely upon the "specific item" method of proof of unreported income, it was prejudicial error for the trial court to permit the introduction of certain expenditures and acquisition of property during the period involved, for example, the cash purchase by the defendant of real estate, lot 21 in Bagby Park. The Government contends, in reply, that its proofs of numerous specific items of unreported income could properly be corroborated by proofs that the defendant handled and expended in various ways large sums of cash. We find no variance between the bill of particulars and the proofs made, since corroboration by the Government's theory in this way was clearly permissible. McKenna v. United States, 232 F.2d 431, 436–437 (C.A.8th 1956); United States v. Nunan, 236 F.2d 576, 588 (C.A.2d 1956); cert. den. 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665, reh. den. 353 U.S. 952, 77 S.Ct. 858, 1 L.Ed.2d 860.

Defendant's principal reliance, asserted both in the trial court and on appeal, is upon the proposition that, if he is guilty of any crime, it is under the law of Kentucky, the crime of embezzlement. The Government, on the other hand, argues not only that no embezzlement, as that term is normally employed, is involved, but also that the Kentucky statutes do not define embezzlement, and cites authority thereto.

The significance of these arguments pro and con relating to embezzlement arises out of the case of Commissioner v. Wilcox.[2] It was held in Wilcox that embezzled funds enjoyed, with respect to

2. 327 U.S. 404, 66 S.Ct. 546, 906, 90 L.Ed. 752 (1946).

the taxation thereof, an immunity not granted funds illegally obtained from certain other nefarious activities, such as policy pay-offs,[3] for example, or a kidnapper's ransom,[4] or the illegal sale of liquor.[5] If Wilcox were the last word on the subject it might be argued, with considerable justification, that the defendant could not subsequent thereto, have had the criminal intent necessary to be found guilty, if in truth, the funds were embezzled.[6]

But, subsequent to Wilcox, the case of Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, was decided. This case not only "thoroughly devitalized" Wilcox (the quoted words are those of the Court in James, 366 U.S. 213, 81 S.Ct. 1052 (1961)) but, with respect to Wilcox, the Court held that "we limit that case to its facts."

■ A factual comparison, then, must be had. To be income, the Court ruled in Wilcox, the money involved must be held under a claim of right,[7] and, in addition, there must not be an unconditional obligation to repay. The years subsequent to Wilcox saw great numbers of cases seeking shelter under its umbrella. Offenses involving property were uniformly termed embezzlements, with distinctions urged and argued so subtle as to challenge the sophistry of a medieval logician. As one commentator put it "Immediately [following Wilcox] there was a rash of all types of malfactors to gain exemption under this principle, and one court was obliged to explain 'The Wilcox case does not stand for the proposition that all funds "fraudulently or illegally acquired" are non taxable. * * Even if we were to adopt [the taxpayer's] suggestion and denominate these various receipts as "extortion," the result would not be otherwise'." [8]

So matters stood until Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952). This case involved funds derived by extortion. If the claim of right theory were applied, Rutkin's gains would have been as free of tax as those of Wilcox. But the test applied in Rutkin was that of economic gain, of presently existing use and benefit.[9] Under this theory, of course, Rutkin's funds would be taxable and it was so held. It is significant, also, to the argument before us respecting the pro's and con's of the Kentucky law of embezzlement, that Rutkin placed no reliance whatever upon the state criminal law. It is recognized that the Congress employs its own tests of federal taxation, not to be controlled by the subtleties of the criminal laws of the various states.[10] And, although Rut-

3. Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1942).

4. Humphreys v. Commissioner, 125 F.2d 340 (C.A.6th, 1942).

5. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1926).

6. See the opinions of Justices Warren, Brennan and Stewart in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L. Ed.2d 246 (1961).

7. The claim of right doctrine was employed in North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932) for a determination as to the time *when* a sum would be included in gross income. Its use to determine *whether* or not the item would be included is explored in a note Taxing Unsettled Income: The "Claim of Right Test." 58 Yale L.J. 955 (1949).

8. Holzman, Tax Classics, 29 Taxes 764, 765.

9. "An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." Rutkin, 343 U.S. p. 137, 72 S.Ct. p. 575. See, also, Holmes, J. in Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930).

10. See, Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938); Marienfeld v. United States, 214 F.2d 632 (C.A. 8, 1954); Kann v. Commissioner, 210 F.2d 247, 251 (C.A. 3, 1953), cert. den. 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109 (1954); Daine v. Commissioner, 168 F.2d 449, 451, 4 A.L.R.2d 248 (C.A. 2, 1948). Cf. Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L. Ed. 670 (1946).

kin did not overrule Wilcox, the Court therein expressed the caveat hereinabove mentioned with respect to attempted continued reliance on it, limiting the Wilcox holding to its facts.

Those facts were very simple. Wilcox was a bookkeeper who received funds for his employer. He gambled them away. Legally he was a fiduciary, who was false to his trust. From a "property" point of view, his was not even a voidable title. There was, indeed, no change of even possession of the funds, the only change being in the motivation of the possessor.

 McGuire, on the other hand, was not a possessor who went wrong but a manipulator who acquired property and money by fraud and deceit. Whatever he got he obtained unlawfully in the first instance, unlike bookkeeper Wilcox. We have, in McGuire's case, essentially a chain of frauds, as a result of which the Board's treasurer, Mrs. Horton, issued certain checks, the proceeds of which, in whole or in part, cash or property, ultimately came to him. The machinations of defendant McGuire and the faithlessness of bookkeeper Wilcox are alike only in their motivations for unlawful gain.

Restricting, then, the Wilcox doctrine to its facts, those facts are not here. Thus under any view of criminal intent found in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) [11] the defendant before us may be found to have had the requisite crimi-

nal intent. Under these circumstances not only is the case of Adame's Estate v. Commissioner, 320 F.2d 811 (C.A.5th, 1963) inapposite, but it is equally clear that the trial judge was not in error in refusing to instruct upon defendant's asserted right to rely upon the Wilcox rule.

We find no error. The judgment is affirmed.

[11]. The several opinions therein, as to criminal liability, are summarized in United States v. Wallace, 300 F.2d 525, n. 6, 532 (C.A. 4, 1962) in the following language:

"Chief Justice Warren and Justice Brennan and Stewart voted to overrule Wilcox but thought that the element of willfulness, necessary for conviction under Int.Rev.Code of 1939 § 145(b), could not be proven so long as the tax 'statute contained the gloss placed upon it by Wilcox at the time the alleged crime was committed.' These three decided that James' conviction should be set aside and that the indictment against him should be dismissed.

"Justices Black, Douglas and Whittaker concurred in the judgment reversing James' conviction and dismissing the indictment against him, but they did so because, in their views, Wilcox was correctly decided; they dissented from the decision to overrule Wilcox.

"Justice Clark voted to overrule Wilcox but would have sustained James' conviction on the ground that the record showed conclusively that James placed on bona fide reliance on Wilcox in failing to report the embezzled funds as income.

"Justices Harlan and Frankfurter likewise voted to overrule Wilcox but would have ordered a new trial to afford James the opportunity to present proof as to what, if any, reliance he had placed on Wilcox in failing to report the embezzled funds as income."