HEMAN H. McGUIRE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
McGuire v. Commissioner
Docket Nos. 1132-68, 1133-68.
United States Tax Court
T.C. Memo 1973-51; 1973 Tax Ct. Memo LEXIS 236; 32 T.C.M. (CCH) 222; T.C.M. (RIA) 73051; February 27, 1973, Filed Ora F. Duval, for the petitioner. D. Ronald Morello, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined deficiencies in income tax and additions to tax of the petitioner Heman H. McGuire for the years and in the amounts as follows: 2 Year
Deficiency
Sec. 293(b)
Addition to Tax
Sec. 6653(b)
Sec. 294(d)(1)(A)
Docket Number 1132-68
1950
$ 5,169.35
$2,584.68
462.46
-
1951
899.05
792.31
63.34
-
1952
2,039.55
1,289.70
178.46
-
1953
2,990.20
2,074.44
302.44
-
1954
5,134.86
-
418.32
$ 2,567.43
1957
2,517.81
-
-
1,258.91
1958
5,910.60
-
-
2,955.30
1959
1,531.26
-
-
765.63
1960
1,217.53
-
-
-
1961
1,228.96
-
-
- Docket Number 1133-68
1949
1,207.70
603.85
103.90
-
1955
11,108.74
-
-
5,554.37
1956
3,468.31
-
-
1,734.16
Respondent also determined deficiencies in income tax and additions to tax of Loraine B. McGuire, docket No. 984-68, for the years and in the amounts as follows: Addition to Tax Year
Deficiency
Sec. 293(b)
Sec. 294(d)(1)(A)
Sec. 6653(b)
1949
$ 1,207.70
$ 603.85
$ 103.90
$ -
1955
11,108.74
-
-
5,554.37
1956
3,468.31
-
-
1,734.16
*238 The Court granted a joint motion to consolidate these cases for trial, briefing, and opinion. Thereafter the Court directed that the present trial would be confined to those issues with regard to which the respondent had the burden of proof. 2 -a Subsequent to the trial of these cases, petitioner Loraine B. McGuire and respondent agreed on a stipulated decision in docket No. 984-68, and that decision completely disposed of that case. Thus, the issues remaining for decision are: 3 (1) Whether Heman H. McGuire understated his taxable income for the years 1949-1959 due to fraud with the intent to evade tax, and (2) Whether the assertion of deficiencies for the years 1949-1954 is barred by the statute of limitations. FINDINGS OF FACT Some facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, are incorporated by reference. At the time the petitions were filed, Heman H. McGuire was a resident of Grayson, Kentucky. For the years 1949, 1955, and 1956, McGuire, hereinafter sometimes referred to as petitioner, timely filed joint income tax returns with the district director of internal revenue, Louisville, Kentucky. *239 For the years 1950 through 1954, and 1957 through 1961, petitioner timely filed separate income tax returns with the district director of internal revenue, Louisville, Kentucky. Statutory notices in docket Nos. 1132-68 and 1133-68 were mailed to petitioner on December 14, 1967. 4 During the taxable years involved, Heman H. McGuire was the superintendent of schools for Carter County, Kentucky. As superintendent, he was in charge of the administration of the business and the curriculum of the school system. Also, petitioner was secretary of the Carter County Board of Education. As secretary, petitioner organized meetings of the Board and maintained records of Board proceedings. The Board of Education was comprised of members elected in a county election. The members then selected a chairman, who was presiding officer at Board meetings. The Board meetings were held in petitioner's offices. The agenda for a meeting was generally prescribed by petitioner. One of the primary functions of the Board was to approve or disapprove payment of bills sent to the Board. Businesses and individuals who furnished materials or services to the school system would send statements *240 to the Board. These statements would be collected and held until the next Board meeting. At that time, the Board would authorize payment of the bills by issuing "Orders of the Treasurer," a state form which served as official notice to the Board treasurer to make disbursements. The form would be signed by both the secretary and the chairman 5 of the Board. Only the treasurer was authorized to disburse Board money, and any disbursement was required to be pursuant to a Board order. Upon occasion, payment of school expenses would be made by means of a "school claim." This was a document certifying that the Board owed a particular business or individual a certain amount of money which was to be paid on a stated date. The document would generally be a statement typed on Board stationery and issued and signed by petitioner. A school claim was not official payment by the Board, but did serve as a convenience to creditors, since it could be issued by petitioner in between Board meetings. At least one local bank in Grayson would pay a creditor the amount of the claim, less a small discount, thus allowing the creditor to receive his money in advance of the next Board meeting. The *241 creditor would assign the claim to the bank which would then receive the official Board payment when the treasurer issued payment to the creditor. The Board never failed to authorize payment of a school claim after the claim had been issued and discounted by a bank. McGuire exercised considerable control over the operation of the Board and the action taken by it. A typical Board meeting during the years involved would deal with bills submitted 6 by the various creditors. At these meetings, McGuire would have the bills available for examination by the members. Any examination of these bills by the members was casual in nature. During 1949 to 1959, McGuire was in a partnership with Dr. William L. Gearhart, a dentist. The partnership owned the Grayson Professional Building, which housed a post office, beauty shop, drug store, doctor's office, and Gearhart's office. McGuire and Gearhart were equal partners in their business. Gearhart was a member of the Carter County Board of Education during 1959 and 1960. By Executive Order dated June 1, 1960, the Governor of Kentucky, Bert Combs, ordered an audit of the Carter County Board of Education. The audit was performed *242 by the Auditor of Public Accounts, an agency of the Commonwealth of Kentucky. The audit covered the period from July 1, 1953 to June 30, 1960. Approximately coincident 4ith the state audit, the Internal Revenue Service began investigating the income tax returns of Heman McGuire. On February 14, 1962, a grand jury returned a two-count indictment against petitioner, charging him with violation of section 7201 (willful attempt to evade or defeat a tax) of the Internal Revenue Code of 1954 for the years 1955 7 and 1956. [1] On March 7, 1963, after a trial before a jury, petitioner was found guilty as charged. 1949. One of the businesses dealing with the Board was The Whitehurst Company owned by E. B. Whitehurst and located in Ashland, Kentucky. The *243 company was primarily a plumbing, heating, and roofing business. E. B. Whitehurst and McGuire were friends and McGuire was frequently at the company. Sometime prior to the present proceeding Whitehurst died. During 1960, Whitehurst turned over his books and records to an internal revenue agent. The records were returned in 1961. When Whitehurst retired in 1962, the records were stored in his bookkeeper's basement until the bookkeeper burned them in 1971. The internal revenue service had made photostatic copies of the records, however, and those copies were placed into evidence. 8 The Whitehurst Company bookkeeper testified that on numerous occasions during the years involved, petitioner would make personal purchases from the company, and the employees would charge the items to petitioner's personal account.Then, E. B. Whitehurst would change the statement and send the bill to the Board. The bookkeeper further testified that to her knowledge, petitioner never paid for any of his personal purchases and that his purchases were always paid for by the Board. She recalled that on one occasion, she saw Whitehurst give petitioner a number of blank company invoices. The Whitehurst *244 records show that on July 14, 1949, the Board owed Whitehurst Company $82.44. On that date, a Board check in the amount of $2,382.44 issued to the company. The Board paid $2,300 more than it owed. The check was endorsed and cashed by E. B. Whitehurst. On July 18, 1949, the amount of $82.44 was credited to the Board account with the company. No refund to the Board was made by the company. The bookeeeper could not explain why the Board made the overpayment, and Whitehurst was, of course, deceased at the time of trial. There is no evidence that petitioner actually received any of the overpayment. 9 On December 9, 1949, the Board did not owe Whitehurst Company anything. Pursuant to an order of the Board (signed by the chairman of the Board, J. F. Burton, and by the secretary, McGuire), the treasurer of the Board issued a check to the company for $2,214.60. The check was endorsed and cashed by E. B. Whitehurst. The money was not refunded to the Board. No evidence was presented to show that any of the overpayment came into the possession of the petitioner. [2]
*245 1950. On June 8, 1950, the Board ordered the treasurer to pay Whitehurst Company $1,002.60. On June 15, 1950, the Board's check for that amount was issued. On June 19, the Board's account with the company was credited with $600.56 and petitioner's personal account was credited with the remaining $402.04 of the Board payment. The company's bookkeeper was directed by E. B. Whitehurst to so apply the payment. 10 This $402.04 of Board money which petitioner indirectly received was an item of income which petitioner did not report on his 1950 income tax return. On November 7, 1950, the Board ordered the treasurer to pay Whitehurst Company $4,624.10, and the Board's check issued on the following day. At that time, the Board did not owe the company anything. The bookkeeper for the company did not see the check, which was endorsed and cashed by E. B. Whitehurst. On November 13, E. B. Whitehurst gave his bookkeeper $1,600 in cash to credit to McGuire's personal account. None of the Board payment was credited to the Board account, and no refund was made to the Board. We find that the $1,600 which was credited to petitioner's account came from the Board payment. There is no *246 evidence that any of the remainder of the overpayment came into petitioner's possession. Thus, the $1,600 represents an item of income to petitioner, and this income was not reported on his 1950 income tax return. 1951. Stevens Motor Sales, which later became East End Motor Sales, was a Dodge and Chrysler dealership owned entirely by W. E. Stevens during all the years involved except for the period between August 15, 1955, and January 10, 1958, when the business was operated as a partnership. The dealership sold numerous automobiles and other vehicles and parts to the Board 11 and also periodically sold automobiles to McGuire personally. Stevens actually recalled selling automobiles to petitioner only in 1955 and in 1958. He testified that he recalled the Board paying for the automobiles that petitioner bought. Petitioner owned a 1951 Dodge and in 1953, transferred it and $1,700 to Arthur Shaffer for a piece of property. There is no evidence tending to show that the 1951 Dodge was purchased from Stevens Motor Sales. And other than Stevens' vague testimony, there is no evidence tending to show that the automobile was paid for with Board funds. 1953. Whitehurst Company *247 records show that on December 12, 1952, a charge for $211.81 was made for work done at Kenny's Service Station. A charge for $49 was made on January 16, 1953, for other work done at Kenny's. Several of petitioner's income tax returns for the years involved report rent income from a gas station. The two charges were billed to Heman McGuire's account and were marked paid on May 13, 1953. Petitioner personally, however, did not pay anything on his account. The Whitehurst Company invoices describing the charges to Kenny's contains E. B. Whitehurst's handwritten note that the payments "might have been in check #3294 dated 5-8-53 or check #3308." Board check number 3294 in the amount of $2,504 was issued to 12 E. B. Whitehurst on May 8, 1953. The check was ordered paid by the Board. At the time the Board paid the $2,504, it owed the company only $4. We think it clear that the two charges totaling $260.81 were paid from the Board check. This payment of petitioner's bill by the Board constitutes income to the petitioner which was not reported on his 1953 income tax return. Except for the $260.81, there is no indication that petitioner received any benefit from the remainder of *248 the Board payment. On June 26, 1953, McGuire purchased a 1953 Dodge four-door sedan from Stevens Motor Sales. He transferred the automobile to A. G. Shaffer in 1954 as part payment for a piece of property.Respondent introduced a handwritten page from a state auditor's work papers which were prepared during the state audit of Board procedures. The information on the page was, in part at least, transcribed from license registration receipts in the Carter County Clerk's office. The work paper contains: a description of the 1953 Dodge; the notation that it was purchased from Stevens Motors on June 26, 1953; the fact that it was licensed in the name of Heman H. McGuire; and the fact that it was transferred to A. G. Shaffer on December 16, 1954. Also appearing with the information on the car is the notation "Board Payment." The testimony of the state auditor indicates that he obtained from 13 the license registration receipts the name in which the car was licensed. The auditor did not, however, state the source of the other information on the worksheet. He did not explain that license registration receipts contain such information as who paid for the vehicle and to whom it was *249 transferred. We cannot conclude merely from the notation "Board Payment" on this work paper that the car was in fact purchased by petitioner with Board funds. It has not been established that the Board paid for this automobile and consequently, the value of the automobile does not represent unreported income to petitioner. 1954. Whitehurst Company records indicate that on January 22, 1954, the Board's account was charged the amount of $493.66. The amount was paid on February 9, pursuant to the Board's direction. A company invoice reveals that the charge was for various plumbing materials, and indicates that the charge was billed to the "Carter County Board of Education Attention: Mr. McGuire." E. B. Whitehurst directed his bookkeeper to add the "Attention: Mr. McGuire" to the account name. The bookkeeper did not know whether the materials were actually received by the Board or by petitioner. The Board check was not endorsed by Whitehurst but rather was endorsed with a company stamp and the entire amount was deposited to the company account. 14 Similarly, another invoice charging an amount of $1,373.60 to the Board on February 23, displays the notation "Attention: Mr. *250 McGuire." The notation was made at the direction of E. B. Whitehurst. The amount was ordered paid by the Board on March 6, and payment was received by Whitehurst Company on March 8. We do not find that petitioner received any benefit from these Board payments, and consequently, they do not represent income to him. E. B. Whitehurst directed his bookkeeper to order an electric range for McGuire. A hardware company sold the range to the Whitehurst Company on April 5, 1954, for $125.87. After receiving the bill, Whitehurst then prepared a charge slip to the Board dated April 5, for three water closets and repair parts for eight water closets "as per agreed" in the amount of $179.87. The company's invoice for this transaction shows that the amount was charged to the "Carter County Board of Education, Grayson, Kentucky, Attention: Mr. McGuire." Pursuant to a Board order dated May 8, 1954, a Board check in the amount of $183.87 issued to pay for the electric range plus a previous $4 charge. Petitioner received the benefit of $125.87 of Board funds, and this item of income was not reported by him. 15 A Whitehurst Company charge slip dated April 12, 1954, indicates that a number *251 of items (bowl cleaner, mops, plunger, etc.) were sold to the Board. The Whitehurst Company bookkeeper added to this list other items such as an electric apartment stove ($179.87) and a refrigerator ($87.50). Thereafter, E. B. Whitehurst marked through the itemized list and wrote on the charge slip that the charge was to be billed as "plumbing material for Carter County schools." He then added a charge of $92 for "incidentals" and another charge for $40 to bring the total bill to $455.62. A company invoice indicates that the charge was billed to simply the "Carter County Board of Education." At the direction of the Board, a Board check was issued to Whitehurst Company on June 10, in the amount of $455.62. It has not been established that any part of this Board payment benefited the petitioner, and we conclude that no part of this item is income to him. As of August 9, 1954, the Board owed the Whitehurst Company $172.85. Pursuant to the orders of the School Board, however, the Board's check for $4,672.85 issued on that date. The check was not received by the company bookkeeper, and E. B. Whitehurst endorsed and cashed the check. None of the proceeds was applied to the Board *252 account, and none of the 16 overpayment was refunded to the Board. Here again, there is no evidence indicating that petitioner obtained any of this payment or that any part ot it was used for his benefit. Consequently, we conclude that petitioner derived no income from the $4,672.85 paid to Whitehurst Company. 1955 & 1956. Petitioner was convicted by a jury of violating section 7201. That section provides that any person who wilfully attempts to evade or defeat any tax imposed by Title 26 of the United States Code thereby commits a felony. Petitioner was indicted on two counts, for 1955 and 1956, charging that he did "wilfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him * * * by filing * * * a false and fraudulent joint income tax return" wherein he understated his taxable income. At the criminal trial, W. E. Stevens testified about numerous transactions he had with petitioner. On one occasion petitioner issued a school claim to Stevens. The document, dated June 1, 1955, reads as follows: 17 "To Whom It May Concern: This is to certify that the Carter County Board of Education is indebted to W. E. Stevens (Stevens *253 Motor Sales) of Olive Hill, Kentucky, in the sum of $14,748.00 for school bus as in accordance with bid. Said amount is to be paid June 17, 1955. Signed: /s/ Heman H. McGuire Heman H. McGuire Secretary, Carter County
Board of Education I, W. E. Stevens, hereby assign the aforesaid claim to the First National Bank of Grayson, Ky this the 1st day of June 1955. Signed: /s/ W. E. Stevens W. E. Stevens" Stevens testified that the Board was not in fact indebted to him in the full amount stated in the claim. A deposit ticket dated June 1, 1955, on the First National Bank of Grayson, Kentucky, made out to W. E. Stevens lists the $14,748 amount less several items. One item reads: "Less cash given to Heman H. McGuire, $4,766.18." At the criminal trial, petitioner admitted receiving this money from Stevens but stated that it was in repayment of a loan. Stevens testified, however, that he did not owe petitioner any money. The cash receipts journal of East End Motor Sales shows a receipt of $3,738 from the Carter County Board of Education on June 28, 1956. The company's records also show a receipt of $3,719 received from "First National Bank - H. McGuire" on 18 June 6, 1956. *254 Stevens testified that the receipts were duplicate payments for the same truck. A school claim dated June 6, 1956, certified that the Board owed East End Motor Sales $3,738. The claim was issued and signed by petitioner. Stevens assigned the claim to the First National Bank of Grayson and received a bank money order, dated June 6, 1956, in the amount of $3,719. The bank retained a discount of $19. The money order was endorsed by Stevens. Stevens' records indicate that the money was to be returned to the Board. Stevens testified that he gave the money to petitioner. Stevens further testified that petitioner stated that he was going to use the money for a while. Also at the criminal trial of petitioner, E. B. Whitehurst testified about numerous transactions he had with petitioner. Whitehurst testified that on one occasion he and petitioner went to a furniture store where petitioner selected a stove. The stove was delivered to Whitehurst Company, where petitioner picked it up. The bill for the stove remained unpaid for a considerable length of time, and Whitehurst inquired about payment. Petitioner told Whitehurst to send the bill to the Board and that petitioner would *255 see that payment was made. Whitehurst complied and received payment. 19 Whitehurst further testified concerning a Board check dated April 9, 1955, in the amount of $2,562.40, issued to E. B. Whitehurst as payee. He stated that petitioner brought the check to him for Whitehurst to cash. Whitehurst cashed the check and gave the proceeds to petitioner. Whitehurst testified that no bill had been sent to the Board for that amount. 1957. A Whitehurst Company charge slip to the Board dated March 1, 1957, lists material purchased for $269.85. The invoice indicates that the charge was billed to the "Carter County Board of Education." A Board check for that amount issued to the Whitehurst Company on April 8. There is no evidence that petitioner received the amount paid or that he received the material paid for by the Board. Consequently, this transaction does not represent income to petitioner. A charge slip to the Board dated August 2, 1957, indicates a charge of $186.85 for heating materials furnished and delivered. The invoice indicates that the billing was to the "Carter County Board of Education, Attention: Mr. McGuire, Supt." On the Board's ledger sheet in the company's *256 books, however, there is a notation indicating that the charge was for work done at the post office. The Board ordered the amount to be paid, and its check issued to the company on August 9. Because petitioner and W. L. Gearhart were equal partners in the 20 Grayson Professional Building, one-half of the $186.85 was income to petitioner in 1957. He did not report this item on his return for that year. On August 27, 1957, a number of small items costing $4.60 were purchased by the Board from the Whitehurst Company. On the Board charge slip for that purchase, E. B. Whitehurst later wrote in an additional item: "On Grayson Post Office, material for same, $264.50." A company invoice shows that the total amount of $269.10 was billed simply "Carter County Board of Education" on September 17. The Board issued its check to the Whitehurst Company for that amount on November 8. Of the $264.50 which the Board paid for work done on the post office, one-half is income to petitioner. He did not report this amount as income on his return for 1957. A Whitehurst Company charge slip for the Board of Education dated November 22, 1957, lists material furnished for schools, $279.85. The *257 invoice for the transaction indicates that the billing was to "Carter County Board of Education Attention: Mr. McGuire." Pursuant to the Board's order, a Board check for the above amount issued on December 7. There is no evidence that petitioner obtained any part of this payment or that he otherwise derived a benefit from it. We find that this item does not represent income to petitioner. 21 1958. On December 9, 1957, several items (Sloan valve, urinal strainer, etc.) were purchased by Heman McGuire from the Whitehurst Company. On the charge slip for that transaction, E. B. Whitehurst marked through McGuire's name and wrote in its place: "Carter County Board of Education." A second charge slip dated March 6, 1958, charged the Board with numerous items, including 500 feet of "Orangeburg" pipe. The total amount for the various items on the two charge slips was $405.35. A Whitehurst Company employee delivered the pipe to the Grayson Professional Building, but at the direction of E. B. Whitehurst, charged the Board the $24 for his time in making the delivery. A total amount of $429.35 for the various items on the two charge slips and for the cost of delivery was entered on *258 an invoice for the Board. The invoice indicated that the amount was billed simply to the "Carter County Board of Education." Pursuant to an order of the Board, the Board's check for $405.35 issued to the company on May 8, 1958. We find that the $405.35 payment by the Board was for materials used in the Grayson Professional Building, and therefore, one-half of this amount was income to petitioner. This income was not reported on his 1958 return. 22 A bank money order from First National Bank, Grayson, Kentucky, in the amount of $16,043.03 dated March 29, 1958, was received by East End Motor Sales as payment on a school claim. The Board actually owed only $14,043.03. On March 29, W. E. Stevens deposited $14,043.03 to his company account and withheld $2,000 in cash. A check stub in the East End check book shows a March 29, 1958, entry of "cash refund on school busses" in the amount of $2,000 to the Board. The entry was written by Stevens. However, no check was written to the Board. Stevens testified that he gave $2,000 in cash to petitioner, personally. This $2,000 which petitioner acquired was income which he did not report on his return for 1958. An East End Motor *259 Sales invoice states that on January 1, 1958, a 1958 Dodge Custom Royal Lancer was sold to Heman McGuire. The invoice indicates a cash payment of $2,833.20. The car was licensed under the name "Carter County Board of Education, Heman H. McGuire, Superintendent." The owner signature on the license receipt was "Heman H. McGuire." The state auditors determined that Board funds paid for the automobile although the Board had no knowledge of the purchase and did not authorize it. Neither the minutes of a Board meeting nor the accepted bid mentioned the purchase of 23 an automobile. An invoice dated March 17, 1958, from W. E. Stevens, owner of East End Motor Sales, to the Board of Education listed six school bus chassis for $18,317.40, one Dodge vehicle chassis at $2,833.20, and transportation and parts for $255.60 for a total amount of $21,406.20. A later invoice dated March 29, 1958, lists only motor vehicles for $21,150.60 and transportation and parts for $255.60 for a total amount of $21,406.20. On March 29, 1958, petitioner issued a school claim to East End Motor Sales for $21,406.20. And, on November 8, 1958, the Board made payment on the claim by issuing its check to the *260 First National Bank of Grayson, Kentucky, in the amount of $21,406.20. The state auditors found that the Dodge vehicle chassis included in the invoice dated March 17, 1958, was in fact the 1958 Dodge Custom Royal Lancer sold to McGuire.A private license plate was purchased for this automobile rather than the official license plate required for state-owned automobiles. We find that petitioner purchased this automobile as his own personal car and that the Board paid for the purchase. The Board payment of $2,833.20 was income to petitioner but was not reported on his return for 1958. 24 1959. A Whitehurst Company charge slip dated December 10, 1958, charges Heman McGuire $368.15 "For Work at Post Office." Later E. B. Whitehurst marked through the date and wrote "Jan 30th" above the old date and wrote "Olive Hill Additional Roofing" on the slip. A charge slip to the Board dated January 30 lists a charge of $386.15 and states "Olive Hi School Extra on Repairs to Roof as per agreement." The charge slip is initialed by E. B. Whitehurst. Apparently, in making the second charge slip Whitehurst either increased the price or transposed a digit. The company invoice shows a charge *261 of $386.15 billed to the "Carter County Board of Education." A Board check issued for that amount on April 9, 1959. Of the $386.15 paid by the Board, $368.15 was for work done on the Grayson Professional Building. One-half of this amount was income to petitioner, and this income was not reported on his return for 1959. In 1960, after learning that the Internal Revenue Service was investigating his affairs, McGuire telephoned the Whitehurst Company. E. B. Whitehurst was absent, and McGuire told the bookkeeper that the Internal Revenue Service wanted to examine the Whitehurst books and told her not to let the Service see the books. 25 Also at this time McGuire asked W. E. Stevens to change his records to show that Stevens owed McGuire money. Stevens was also asked by McGuire to file amended tax returns and report income that McGuire had been charged with receiving. In interviews with Internal Revenue agents, petitioner stated that he never received any money, favors, material, or kickbacks that were not shown on his returns. OPINION The questions presented are (1) whether petitioner understated his taxable income for the years 1949-1959 due to fraud with the intent *262 to evade tax, and (2) whether the assertion of deficiencies for the years 1949-1954 is barred by the statute of limitations. Respondent determined deficiencies in income tax for the years 1949-1961 but asserts fraud only for years 1949-1959. The parties have indicated that the years 1957-1961 are open by consent, and petitioner has plead the statute of limitations only for years 1949-1954. At the outset we note that the present inquiry is confined to those issues with regard to which the respondent has the burden of proof. Respondent, of course, has the burden of proving fraud. Section 7454(a), Internal Revenue Code of 1954. Where a return is shown to be fraudulent, the normal three-year 26 statute of limitations is inapplicable, and the tax may be assessed at any time. [3] Since the years for which fraud is asserted include the years for which the statute of limitations 26 -a is plead, our focus here is upon whether respondent has established fraud for years 1949-1959. In this proceeding we are not concerned with determining the amount of any deficiency for any year. *263 The determination of the existence of fraud is a question of fact. Welburn Mayock, 32 T.C. 966 (1959); Lessmann v. Commissioner, 327 F. 2d 990 (C.A. 8, 1964), affirming a Memorandum Opinion of this Court. Resolution of the question requires a consideration of the entire record. M. Rea Gano, 19 B.T.A. 518 (1930). "The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner, 118 F. 2d 308, 310 (C.A. 5, 1941). Fraud is not to be presumed, and we do not find fraud from circumstances which at most create only suspicion. Olinger v. Commissioner, 234 F. 2d 823 (C.A. 5, 1956). The existence of fraud must be shown by clear and convincing proof. Arlette Coat Co., 14 T.C. 751 (1950); W. A. Shaw, 27 T.C. 561 (1956), affd. 252 F. 2d 681 (C.A. 6, 1958).
Respondent seeks to demonstrate fraud in the particular years by the specific item method. Respondent contends that as a result 27 of a pattern of various schemes for obtaining Board funds for his personal benefit, petitioner consistently *264 omitted specific items of income from his returns.
At the hearing, petitioner introduced no evidence in his own behalf. Respondent maintains that in one alleged scheme for obtaining Board funds, petitioner either submitted or caused to be submitted to the Board fictitious invoices and that he then caused the Board to make payment on these false items. It is asserted that payments were either applied to petitioner's personal purchases or were returned to petitioner in cash. Respondent's position is that petitioner received the entire amount of any diverted funds. Respondent contends that petitioner also caused Board checks to be issued to certain individuals or businesses when the Board owed those parties nothing. Respondent's position is that the entire amount of the proceeds from these checks were given to petitioner. [4]
*265 28 We believe that respondent has clearly established that petitioner utilized certain arrangements to divert Board funds to his own benefit. There emerges from the record in this case a clear pattern of misappropriation of funds by petitioner and the attempted concealment of that source of gain. This gain 29 is, of course, includable in petitioner's income. James v. United States, 366 U.S. 213 (1961); Rutkin v. United States, 343 U.S. 130 (1952). Substantial items of this income were consistently omitted from petitioner's returns, and the omissions were knowing and deliberate and not due to oversight or ignorance of the law. When petitioner realized that his affairs were being investigated, he sought to prevent records from being examined by the Service, and he sought to have records falsified. Petitioner was superintendent of schools and secretary of the Board of Education. He dominated the affairs of the Board and its meetings. His control of Board functions is exemplified in the handling of one of the Board's primary responsibilities - the authorizing of payment of school debts. Instead of scrutinizing submitted bills and determining *266 that materials or services had in fact been received by the school system, the Board apparently routinely approved whatever bills petitioner presented at the meetings. This situation is evident from the fact that payments to individuals or businesses were often authorized by the Board when nothing was owed. Petitioner used his domination of the Board to promote arrangements designed for his enrichment. 30 Undeniably, petitioner and E. B. Whitehurst participated in one such arrangement. On one occasion in 1950, Whitehurst directed his bookkeeper to apply part of a Board payment to the Board's account and the remainder of that payment to petitioner's account. At the criminal trial, Whitehurst testified about one instance in which petitioner brought him a Board check although no bill had been sent to the Board. Whitehurst stated that he cashed the check and gave the proceeds to petitioner. But the evidence does not establish that Whitehurst was a mere tool utilized by petitioner to obtain Board funds. For example, in 1954, Whitehurst ordered an electric range for petitioner and was charged $125.87. However, the false invoice sent to the Board charged $179.87. There is no *267 indication that petitioner received the overcharge added by Whitehurst. Also, later in 1954, Whitehurst added several items to a bill to be sent to the Board. He apparently again charged for the electric range and added an item of $92 for "incidentals" and another charge of $40. These overcharges were apparently due to Whitehurst's own initiative. There is no indication that these overcharges were returned to petitioner; the evidence suggests that it is just as likely that Whitehurst retained these amounts. 31 Respondent's burden has been complicated by the fact that Whitehurst was deceased at the time of this proceeding. However, the transcript of the testimony in the criminal proceeding was stipulated as evidence in the present case. At the criminal trial covering 1955 and 1956, Whitehurst testified about numerous dealings with petitioner and stated that he did not retain any of the diverted funds. However, we decline simply to conclude from that testimony that he never retained any of the funds shown to have been diverted in other transactions in other years. Therefore, we have carefully scrutinized the allegedly fraudulent transactions to determine whether respondent *268 has clearly and convincingly shown that petitioner actually received unreported income. One aspect of respondent's theory relates to a supposed code between petitioner and Whitehurst. It is contended that Whitehurst used a notation such as "Attention: Mr. McGuire" or "as agreed" on invoices whenever a personal purchase by petitioner was being charged to the Board. Such was the case, for example, with one item in 1957. Work done on the post office in the Grayson Professional Building was charged to the Board in a false invoice, and the billing was to the "Carter County Board of Education, Attention: Mr. McGuire, Supt." However, on another occasion in 1957, work done on the post office was surreptitiously charged to 32 the Board, but the billing was to the "Carter County Board of Education." Similarly, in 1959, the Board was charged for work done on the post office, but the invoice does not contain the questioned notation. Respondent has not shown to our satisfaction that the notations alone necessarily indicate a false invoice. The notations were not used consistently. Thus we have not found that an invoice displaying one of the notations represents Board funds diverted to *269 petitioner unless something more appears to indicate that petitioner obtained the benefit of a Board payment. Respondent has also clearly established that petitioner utilized W. E. Stevens in another scheme. On one occasion in 1958, petitioner had the Board issue a $2,000 overpayment to East End Motor Sales, and then petitioner obtained the $2,000 from Stevens. Petitioner also arranged for the Board to pay for a personal automobile he purchased from East End Motor Sales. For our purposes here, we need not evaluate every alleged omission of income. We simply determine whether respondent has shown a fraudulent omission of income for each of the years 1949-1959. 1949. For 1949, respondent has shown that on two occasions the Board made improper payments of $2,382.44 and $2,214.60 to the Whitehurst Company. While Board funds have been shown to 33 have been diverted, there is no indication that in either instance petitioner actually received the money. For this year, then, respondent has not shown the existence of any deficiency "due to fraud with intent to evade tax" within the meaning of section 293(b) of the Internal Revenue Code of 1939. [5]
*270 1950. In accord with the arrangement between petitioner and E. B. Whitehurst, the latter directed that $402.04 of a $1,002.60 Board payment be credited to petitioner's personal account at the Whitehurst Company.Also, $1,600 of a $4,624.10 Board payment was applied to petitioner's personal account. These items of income from the diverted funds were omitted from petitioner's income tax return. We conclude that the resulting deficiency in tax was due to fraud with intent to evade tax. Section 293(b), Internal Revenue Code, 1939. 1951 & 1952. Respondent has not shown that petitioner's personally-owned 1951 Dodge was purchased with Board funds. Apparently it is urged that we find that any Dodge automobile owned by petitioner was bought from W. E. Stevens and paid for 34 by the Board. However, Stevens did not recall the 1951 transaction, and no other evidence compels the conclusion urged by respondent.It has not been shown that petitioner received an item of unreported income in 1951. Although we might suspect that the automobile was purchased with diverted funds, we do not find fraud from mere suspicion. Olinger v. Commissioner, supra.
For 1952, respondent *271 has produced no evidence of a particular omission from taxable income. It is contended, however, that we should find fraud for this year because of the consistent pattern of fraud for the other years. Suffice it to say, we do not presume fraud and are not clearly convinced that it occurred in 1952. 1953. In 1953, $260.81 of a Board check was applied to petitioner's personal account at the Whitehurst Company. This item of income was omitted from petitioner's income tax return and the resulting deficiency is due to fraud with intent to evade tax. Section 293(b), Internal Revenue Code, 1939. Respondent has not shown to our satisfaction that the 1953 Dodge was purchased for petitioner with Board funds, and consequently, the value of the automobile does not represent unreported income to petitioner. 35 1954. Respondent contends that separate charges to the Board of $493.66 and $1,373.60 from the Whitehurst Company represent income to petitioner. The basis for this contention is the presence of the questioned notation on Whitehurst Company invoices. We have found that these notations alone do not establish that the charges were for petitioner's benefit, and consequently, *272 these items were not income to petitioner. Respondent also seeks to show that petitioner obtained $4,672.85 from a Board overpayment to the Whitehurst Company. While it is clear that the amount was improperly obtained from the Board, it has not been established that petitioner actually obtained the money. Petitioner did, however, receive $125.87 of unreported income when Whitehurst submitted a false invoice to the Board disguising the purchase of an electric range for petitioner. This item of income was not reported, and the resulting underpayment of tax was "due to fraud" as that phrase is used in section 6653(b) of the Internal Revenue Code of 1954. [6] 36 In another transaction during 1954, Whitehurst falsified a charge to *273 the Board. He apparently charged the Board a second time for the electric range and added other charges for unspecified "incidentals." None of this payment of $455.62 was shown to have come into the possession of petitioner, but we are asked simply to conclude that all of the overpayment was returned to him. As our findings of fact indicate, respondent has failed to prove that peitioner received any income from this transaction. 1955 & 1956. Petitioner was convicted by a jury of violating section 7201 of the Internal Revenue Code of 1954 in years 1955 and 1956. The conviction depended on the findings of fact that for each year petitioner filed false and fraudulent income tax returns with the intent to evade tax and that therefore he understated his tax for both years. The judgment in that case is final and binding upon petitioner. United States v. McGuire, 347 F. 2d 99 (C.A. 6, 1965), certiorari denied, 382 U.S. 826 (1965). It is now settled that under the doctrine of collateral estoppel, petitioner's prior criminal conviction estops him in this civil proceeding from denying that the returns for 1955 and 1956 were false and *274 fraudulent. Plunkett v. Commissioner, 465 F. 2d 299 (C.A. 7, 1972), affirming a Memorandum Opinion of this Court: Moore v. United 37 States, 360 F. 2d 353 (C.A. 4, 1966); Amos v. Commissioner, 43 T.C. 50 (1964), affd. 360 F. 2d 358 (C.A. 4, 1965). 1957. One transaction for 1957 indicates only that material was purchased by the Board from the Whitehurst Company for $269.85. Respondent has not attempted to show that the payment was diverted to petitioner, and we have found that it was not. Charges of $186.85 and $264.50 for work done on the post office were falsified by Whitehurst and sent to the Board for payment. One-half of these amounts was income to petitioner which was omitted from his return. We conclude that the underpayment of tax resulting from these omissions was due to fraud. Section 6653(b) of the Internal Revenue Code of 1954. Respondent again seeks to include in petitioner's income a Board payment to the Whitehurst Company in the amount of $279.85 because of the presence of the questioned notation on an invoice. Again, we have found that respondent has not shown the item to be *275 income to petitioner. 1958. Petitioner received one-half of the benefit of a $405.35 charge to the Board for materials used in the Grayson Professional Building. He also received and retained a $2,000 refund from an overpayment to East End Motor Sales. Finally, 38 petitioner received $2,833.20 when the Board paid for a car which he purchased as his own personal vehicle. These three items of income were omitted from his income tax return, and we conclude that the resulting underpayment of tax was due to fraud. Section 6653(b) of the Internal Revenue Code of 1954. 1959. In 1959, petitioner received one-half of the benefit of $368.15 when the Board paid for work done on the post office in the Grayson Professional Building. This item of income was omitted from petitioner's income tax return, and the resulting underpayment in tax was due to fraud. Section 6653(b), Internal Revenue Code of 1954. After a thorough consideration of the record as a whole, we conclude that for years 1949, 1951, and 1952, respondent has not shown by clear and convincing evidence that petitioner received income which was not reported on his income *276 tax returns; consequently no fraud has been shown for these years. For years 1955 and 1956, petitioner is collaterally estopped from denying that his returns were false and fraudulent. And finally, for years 1950, 1953 and 1954, and 1957, 1958 and 1959, we conclude that petitioner filed false and fraudulent income tax returns with the intent to evade tax. 39 The question of the applicability of the statute of limitations depends directly on our conclusions on the issue of fraud. Petitioner pleaded the statute of limitations for years 1949 through 1954. Absent fraud, the assertion of deficiencies is barred. In the case of a false or fraudulent return with the intent to evade tax, a proceeding for the collection of the tax may be begun at any time. Section 276(a), Internal Revenue Code of 1939; section 6501(c) (1), Internal Revenue Code of 1954. Consequently, the assertion of deficiencies for the years 1949, 1951, and 1952 is barred. For the years 1950, 1953 and 1954, the assertion of deficiencies is not barred. On the evidence presented, we hold that for the years 1949, 1951 and 1952, respondent has not shown that any part *277 of any alleged deficiencies in petitioner's returns is due to fraud with intent to evade tax. Section 293(b), Internal Revenue Code of 1939. Further, we hold that for the years 1950 and 1953 through 1959, a part of the deficiencies in, or underpayments of tax required to be shown on the returns for these years is due to fraud with intent to evade tax. Section 293(b), Internal Revenue Code of 1939; section 6653(b), Internal Revenue Code of 1954. 40 It follows that for the years 1949, 1951 and 1952, the assessment of deficiencies for these years is barred by the statute of limitations, section 276(a), Internal Revenue Code of 1939; and that for the years 1950, 1953 and 1954, the assessment of deficiencies for these years is not barred by the statute of limitations. Section 276(a), Internal Revenue Code of 1939; section 6501(c) (1), Internal Revenue Code of 1954. The cases of Heman H. McGuire, docket numbers 1132-68 and 1133-68 will be set for trial on a date later to be determined, for which appropriate timely notice will be given. Footnotes
1. That section provides: SEC. 7201. ATTEMPT TO EVADE OR DEFEAT TAX. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution. ↩
2. Respondent offered testimony concerning a television set bought by petitioner through the Whitehurst Company and allegedly paid for by the Board. Petitioner objected to the introduction of this item on the ground that it was not mentioned in respondent's pleadings. However, the testimony was that the purchase occurred in 1948 or 1949. In view of this uncertainty and because of the possibility that the purchase occurred in 1948, a year not under consideration here, we do not consider this item. ↩
3. Section 275 of the Internal Revenue Code of 1939, applicable to years 1949-1953, provided, in part: SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. Section 276 of the 1939 Code provided, in part: SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. Section 6501 of the Internal Revenue Code of 1954 provides, in part: SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule. - Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. * * * (c) Exceptions. - (1) False Return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. ↩
4. The opinion of the Sixth Circuit affirming petitioner's criminal conviction, 347 F. 2d 99 (C.A. 6, 1965), summarizes the schemes described at the criminal trial as follows: The first device involved payment for diverted materials, illustrated by the Minter Homes Corporation matter. In this scheme the defendant would induce the Board to pay for materials supposedly delivered for school use, actually to defendant's use. A second device employed was payment for false claims (i.e. the Stevens Motor Sales case). Here the defendant, as Secretary of the Carter County Board of Education would falsely certify that the Board owed a creditor a certain sum. The creditor, receiving payment on the claim, would then pay all or part of the proceeds to the defendant. Still another method used involved payment for false invoices (i.e. the Whitehurst Heating and Plumbing matter). Here the defendant would induce a third person to present a false invoice to the Board, a portion (or all) of the proceeds of which would be paid over to defendant. A variation of this latter device was also employed (i.e., the Carpenter Body Works matter). Here the Board would pay an excessive sum. The defendant would then contrive to have the refund check issued by the vendor to him, rather than the Board.↩
5. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * * (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2). ↩
6. That section provides, in part: SEC. 6653. FAILURE TO PAY TAX. * * * (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). * * * ↩